IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| EBRO FOODS, INC. | ) | Judge Eugene Wedoff |
| | ) | |
| Debtor and Debtor in Possession. | ) | Case No. 09-10101 |
| _____ | ) | |
| | ) | |
| G AND G PEPPERS, LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **Adversary No. 09 A 500** |
| | ) | |
| EBRO FOODS, INC. | ) | |
| | ) | Hearing: 11/10/2009 at 10:00 a.m. |
| Defendant. | ) | |

**TRIAL BRIEF**

Debtor-Defendant EBRO FOODS, INC. ("Ebro" or "Debtor"), through its attorneys, for its initial trial brief in the above-captioned adversary brought against Debtor by G&G Peppers, LLC ("G&G"), states as follows:

**I.  SUMMARY**

G&G's filed an adversary complaint containing three counts:  (1) breach of contract; (2) violation of a PACA trust; and (3) turnover of trust assets.  Although Debtor acknowledges that it breached a contract for the purchase of peppers by failing to pay G&G the $42,920.00, it disputes that G&G is owed any attorney's fees based on that breach of contract.  With respect to Count II, Debtor contends that G&G did not properly preserve its trust benefits under the Perishable Agricultural Commodities Act ("PACA") because it failed to conform to the strict notice requirements outlined in the Act itself and in subsequent interpretations.  With respect to Count III, since G&G is merely an unsecured creditor of the Debtor, the Debtor should not be

1

compelled to turn over funds in the amount of $42,920.00, or in any other amount, ahead of other unsecured creditor.

## II. STATEMENT OF FACTS

G&G is a corporation engaged in the business of buying and selling wholesale quantities of perishable agricultural commodities. Cplt. ¶ 2. Ebro is a manufacturer of food products. Cplt. ¶ 3. In September and October of 2007, Debtor sent three Purchase Orders to G&G for the purchase of jalapeno peppers. Ex.1, 3, and 4 of Ebro's Trial Ex. List. The upper right hand corner of each Purchase Order contained information about the transaction, including payment terms, designated as "NET 30 DAYS." See Ex. 1, 3, and 4 of Ebro's Trial Ex. List.

Ebro signed the Purchase Orders and sent them to G&G. G&G then counter-signed the Purchase Orders, through its representative Jamie Jacks Schepper, and sent them back to Ebro. See Ex. 1, 3, and 4 of Ebro's Trial Ex. List. On the day of trial, G&G, through its representative Greg Cox, admitted that these Purchase Orders were properly signed by G&G. (Copies of the three executed Purchase Orders are attached to this Brief as **Exhibits A-C.**)

After the Purchase Orders were exchanged, Ebro received the three shipments of jalapeno peppers between October 2-10, 2007. Cplt. ¶ 5. Ebro also received and signed G&G's Bills of Lading with the shipments. (The Bills of Lading were made part of G&G's Exhibit List at trial and are attached to this Brief as **Exhibits D-F.**)

G&G sent Ebro invoices for each of the shipments only after the Purchase Orders were signed, the shipments were received, and the Bills of Lading were proffered and signed. The invoices, which were received after the shipments, contained a column labeled "Terms," under which was written "PACA 'terms.'" (The invoices are attached to this Brief as **Exhibits G-I** and see Ex. 8, 9, and 10 of Ebro's Trial Ex List**.**)

2

Ebro has acknowledged that a balance of $42,920.00 is due to G&G for the peppers.

On January 26, 2009, G&G initiated a suit against Ebro in the U.S. District Court for the Northern District of Illinois, Eastern Division. On March 24, 2009, Ebro filed its Chapter 11 Bankruptcy case, staying the U.S. District Court case. G&G then filed the present Adversary on June 19, 2009, alleging Breach of Contract (Count I), Enforcement of PACA Trust (Count II), and Turnover of PACA Trust Assets (Count III).

## III. ISSUES

With respect to Count I, Ebro acknowledges that it had a contract with G&G by virtue of the signed and counter-signed Purchase Orders, and that it breached its contract by not paying for the shipments of peppers. However, Ebro denies any contractual or statutory basis for G&G to recover attorney fees, costs, or interest based on the breach of contract. With respect to Count II, Ebro denies that G&G has any right enforce a PACA trust because of G&G's failure to preserve its PACA trust rights. With respect to Count III, Ebro denies that G&G has any right to a privileged position for priority turnover of funds that are assets of the estate.

## IV. ARGUMENT

**1. G&G HAS NO BASIS TO DEMAND ATTORNEY'S FEES FOR EBRO'S BREACH.**

Courts have made clear that they follow the "American Rule" for allowing attorney fees and costs to prevailing parties in breach of various actions, including contract actions. Under this rule, attorney fees and costs are not awarded to a prevailing party in a cause of action unless they are expressly authorized by statute or provided for by contract. See Reis Robotics USA, Inc. v. Concept Industries, Inc., 462 F.Supp.2d 897, 908 (N.D. Ill. 2006); Chow v. Aegis Mortg. Corp, 185 F.Supp.2d 914, 918 (N.D. Ill. 2002); In re Weinschneider, 395 F.3d 401, 404 (7th Cir. 2005); and Taylor v. Pekin Ins. Co., 231 Ill.2d. 390, 398-399 (Ill. 2008).

There is no statutory authority allowing attorney fees and costs to a prevailing party in a breach of contract case. And since G&G failed to cite any statutory authority granting them their attorneys' fees and costs, it is Ebro's position that G&G has waived this argument.

There is no contractual basis for granting G&G their attorney's fees and costs. G&G asserts that pursuant to its invoices, sent after G&G delivered the peppers and Ebro had begun to brine them, it is entitled to attorney's fees and costs. Cplt. ¶ 5. But there is no such provision in the Purchase Orders. Further, the invoices were issued by G&G but not counter-signed by Ebro. Thus, the language unilaterally inserted in the invoices by G&G cannot be considered contractual provisions. The court should not give contractual force to a unilateral provision for attorney fees and costs inserted *after the contract and transaction between the parties had been completed.* As a practical matter, Ebro was never given a chance to object or agree to the attorney fees and costs provision prior to completing the transaction and accepting the produce. Furthermore, nowhere in G&G's complaint does it even state *why* it is entitled to costs or interest for the breach of contract.

Even if the attorney's fees and costs provision is construed as a modification to the earlier agreements, it should not be integrated into the contract because the modification materially alters the contract under Illinois' Uniform Commercial Code ("UCC"). Pursuant to 810 Ill. Comp. Stat. 5/2-207(2):

> (2) the additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:
>     (a) the offer expressly limits acceptance to the terms of the offer;
>     (b) they materially alter it; or
>     (c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

G&G's provision for attorney fees is buried in the text at the bottom of the invoice. Ebro did not expect that it had to determine whether to accept such a provision in order to purchase peppers.

4

Ebrow was clearly surprised when it discovered, much later, that the attorney fee provision had been unilaterally added to the invoice. More importantly, courts have often found provisions for attorney fees to be "material alterations" within the meaning of UCC §2-207. See Herzog Oil Field Service, Inc. v. Otto Torpedo Company, 570 A.2d 549, 551-552 (Pa. Super. 1990); and Johnson Tire Service, Inc. v. Thorn, Inc., 613 P.2d 521, 523 (Utah, 1980). Clearly, the attorney's fee provision unilaterally added after the peppers were delivered was a material alteration and should not be given full force and effect.

## 2. G&G FAILED TO PRESERVE ITS PACA TRUST RIGHTS

### A. G&G failed to preserve its PACA rights because it failed to provide the requisite notice on its invoices

The PACA statute itself makes clear what a seller must do in order to retain its PACA trust rights. The PACA statute states the following:

> (3)    The unpaid supplier, seller, or agent shall lose the benefits of such trust unless such person has given written notice of intent to preserve the benefits of the trust to the commission merchant, dealer, or broker within thirty calendar days (i) after expiration of the time prescribed by which payment must be made, as set forth in regulations issued by the Secretary, (ii) after expiration of such other time by which payment must be made, as the parties have expressly agreed to in writing before entering in to the transaction, or (iii) after the time the supplier, seller, or agent has received notice that the payment instrument promptly presented for payment has been dishonored. The written notice to the commission merchant, dealer, or broker shall set forth information in sufficient detail to identify the transaction subject to the trust. *When the parties expressly agree to a payment time period different from that established by the Secretary, a copy of any such agreement shall be filed in the records of each party to the transaction and the terms of payment shall be disclosed on invoices, accounts, and other documents relating to the transaction.* 7 U.S.C. §499e(c)(3)(2009) (Emphasis added).

Thus, if the buyer and seller enter into a transaction for which payment terms are *different* from those prescribed by the Secretary, in addition to statutory language provided for in 7 U.S.C. 499e(c)(4), the seller must disclose those different payment terms on all "invoices, accountings, and other documents relating to the transaction." 7 U.S.C. §499e(c)(3). *The payment terms*

5

*specifically prescribed in PACA are ten (10) days.* Thus, if the parties to a transaction agree to payment terms longer than ten (10) days, but no longer than thirty days (30), these payment terms must be on the "invoices, accountings, and other documents relating to the transaction."

The Courts have cited to this rule in many PACA cases. For example, Judge Boroff noted that the 1995 amendment to PACA:

> now allows sellers to forego written notice upon default and to preserve PACA trust benefits by including the language provided by §499e(c)(4) on billing statements or invoices. Inclusion of this language is not enough, however. In order to preserve PACA benefits by including this specified notice, sellers must also (1) be licensed under PACA, 7 U.S.C. §499e(c)(4); and **(2) if the parties have expressly agreed in writing to a payment period different than the 10-day period provided by the Regulations, the sellers must also include the terms of payment on the invoice**.

AJ Rinella & Co. v. Bartlett, 367 B.R. 21, 30 (Bankr. D. Mass. 2007) (emphasis added).

The Western District of New York has also ruled on the ways that a seller loses its trust benefits for failure to comply with this strict rule. In a similar case to the one at bar, the seller of perishable agricultural commodities brought an adversary proceeding in a bankruptcy case contesting the dischargeability of its claim. The Court held that the seller lost any trust benefits under PACA when it failed to disclose, on its invoice, payment terms on which the parties had previously agreed and that differed from those prescribed by the Secretary of Agriculture. Maine Farmers Exchange v. Delyser, 295 B.R. 430, 435 (Bankr. W.D.N.Y. 2003). Other Courts across the country have also reinforced this rule. See Overton Distributors, Inc. v Heritage Bank, 340 F.3d 361 (6th Cir. 2003), stating that "if the parties agree to payment terms greater than 10 days after acceptance, but in no event more than 30 days after acceptance, this agreement must be in writing. The seller must also disclose these non-statutory payment terms 'on invoice, accounts, and other documents relating to the transaction'." *Id* at 365.

The Court of Appeals for the 9th Circuit held that a seller must *strictly* comply with the mandate of 7 U.S.C. §499e(c)(3). <u>Bowlin & Son, Inc. v. San Joaquin Food Service</u>, 958 F.2d 938 (9th Cir. 1992). In Bowlin, the buyer and seller had agreed to net thirty (30) payment terms. The Court held that because the buyer and seller "entered a separate written agreement deviating from the prescribed payment time period, §499e(c)(3), [it was] required that 'the terms of payment shall be disclosed on invoices' sent by" the seller to the buyer. The Court went on to say that "the clear command" of the language of the PACA statute was "that failure to include payment terms in invoices divests the seller of trust benefits." *Id.* at 940. The Court also found that the seller's *invoice* must contain the agreed upon payment terms that differed from the usual ten (10) day payment term, noting that *invoices* were the kind of document expressly identified in the PACA statute at 7 U.S.C. §499e(c)(3). *Id.*

In the case at bar, Ebro and G&G agreed in writing that the payment terms for the jalapeno pepper shipments were to be net thirty (30) days. The written agreements establishing a payment term longer than the statutory term are evidenced by the Purchase Orders signed by both Ebro and G&G. G&G did not include the changed terms on its invoices.

Courts across the country have made clear that a document constitutes a "written agreement" under PACA extending payment terms beyond the ten (10) day payment term, and thus requiring more strict notice on invoices and other documents, when the agreement satisfies the Statute of Frauds. The United States Court of Appeals sitting in the Seventh Circuit has addressed this issue.

> We conclude that PACA rights are lost whenever the parties enter into a written agreement that satisfies the generally applicable Statute of Frauds. Nothing in either PACA itself or the policies that lie behind it justifies the judicial creation of a rule that can be satisfied only by a formally executed document with the word 'CONTRACT' typed at the top. Also supporting our position is the fact that a PACA trust can be created through letters, invoices, or anything else reduced to writing with no requirement of

7

formality. Patterson Frozen Foods, Inc. v. Crown Foods International, Inc., 307 F.3d. 666, 671 (7th Cir. 2002).

Other courts have referenced and reinforced the language and rule from the Patterson case above. For example, AJ Rinella & Co. v. Timothy Bartlett, held that it "agrees with the others that have considered the issue, and … writings sufficient to satisfy the statute of frauds are also sufficient to constitutes a written agreement under PACA." Rinella, 367 B.R. 21, 31 (Bankr. D. Mass. 2007). The opinion also cites the language above from the Patterson case. Also, In re Cafeteria Operators, LP, cites and references the Patterson case and follows its logic that an agreement which satisfies the Statute of Frauds constitutes a "written agreement" for purposes of PACA. Cafeteria, 299 B.R. 411, 415 (Bankr. N.D. Tex. 2003).

The Statute of Frauds generally only requires that a document be signed by the party sought to be charged or by someone authorized by him and that it contains the contract's essential terms. In addition, any kind of writing is generally sufficient to satisfy the Statute of Frauds if it contains the essential terms of the contract. See Consolidation Services, Inc. v. Keybank Nat. Ass'n, 185 F.3d 817, 819 (7th Cir. 1999); Hartke v. Conn, 429 N.E.2d 885, 888-889 (Ill. App. 3d Dist. 1981); and Lefler v. Board of School Inspectors of City of Peoria, 1926 WL 3868, 2 (Ill. App. 2d Dist. 1926).

The Purchase Orders between Ebro and G&G clearly conform to the Statute of Fraud requirements. The Purchase Orders were signed by representatives of both Ebro and G&G. Furthermore, at the trial date of October 7, 2009, Greg Cox, one of the two principals of G&G, admitted that Jamie Jacks Schepper, an agent of G&G, received and signed the Purchase Orders. The Purchase Orders outlined the essential terms of the transactions for the jalapeno peppers, including terms on payment, shipping, quantity, and price.

8

Thus, the Purchase Orders between Ebro and G&G in this case clearly satisfy the Statute of Frauds and constitutes "written agreements" between the parties extending the payment term for the jalapeno peppers to thirty (30) days. Because there was a written agreement between Ebro and G&G extending the payment term beyond the statutory ten (10) day mark, G&G was required to disclose any new payment term(s) on the "invoices, accountings, and other documents relating to the transaction." 7 U.S.C. §499e(c)(3).

G&G failed to preserve its PACA trust rights. G&G's invoices did not meet the requirements of 7 U.S.C. §499e(c)(3) because they did not disclose the new payment terms agreed upon in writing by the parties. G&G's invoices merely noted that the payment terms were "PACA 'terms'." (See, **Exhibits G-I** attached to this Brief)

The law is clear, the notice requirement of the PACA statute at 7 U.S.C. §499e(c)(3) must be *strictly* followed in order for a seller to preserve its PACA trust benefits. In Maine Farmers Exchange v. Delyser, the Court found that the PACA statute must be strictly adhered to and that 7 U.S.C. §499e(c)(3) "requires that the invoice 'shall' disclose the terms of payment if they are different from the 10-day payment term prescribed by the Secretary of Agriculture." Maine, 295 B.R. 430, 434 (Bankr. W.D.N.Y. 2003). The Court also noted that under the PACA statute, "where the parties have agreed to a payment period different from that provided for by the Secretary of Agriculture," as was in that case, "those agreed payment terms must be disclosed on all written documents used in connection with the purchase and sale transaction, including any invoices, or the PACA Trust beneficiary loses the benefit of the Trust when it fails to properly disclose those different payment terms on all documents." *Id* at 432. The Court in that case also relied upon In re San Joaquin Food Service, Inc, 958 F.2d 938 (9th Cir. 1992), in holding that "where the parties have expressly agreed to payment terms different from that

9

established by the Secretary, the statute mandates that the terms of payment shall be disclosed on the invoices, accountings and other documents relating to the transaction," and that "the clear command of this language is that a failure to include payment terms in invoices divests the seller of trust benefits." *Id* at 434.  The plain language of the case and other court opinions discussing the invoice requirement suggest that the agreed upon payment terms themselves need to be disclosed on the invoice in this situation.  Counsel for Ebro has been unable to locate any case law indicating that a blanket term such as "PACA 'terms'" is sufficient to satisfy this requirement.

One of the few cases addressing the situation where a seller used language almost exactly like the language G&G used on its invoices held that the seller *lost* its PACA trust rights because the invoice language was insufficient for purposes of 7 U.S.C. §499e(c)(3).  In <u>Nature Quality Vine Ripe Tomatoes v. Rawls Brokerage, Inc.</u>, a tomato seller brought an action alleging breach of an extended pay term contract.  <u>Tomatoes</u>, 536 F.Supp.2d 1259 (N.D. Ala. 2005).   Other produce sellers intervened as plaintiffs, and the tomato seller objected to the other sellers' proofs of claim for PACA trust benefits.  The Court held that that the other sellers failed to disclose the extended payment terms on documents relating to the transactions for which they sought trust benefits, and thus the other sellers did not preserve their PACA trust rights.  Specifically, one of the other sellers, Seald-Sweet, LLC, used language on its invoices almost exactly like the language used by G&G in this case.  Seald-Sweet, LLC entered into an agreement with the buyer to receive payment within thirty (30) days of the date of shipment.  The Court stated that "Seald-Sweet failed to disclose the 30-day extended payment term of any of the documents related to the fourteen transactions for which Seald-Sweet seeks trust benefits.  *Instead, Seald-Sweet's invoices stated 'PACA Terms.'*"  (Emphasis added)  The Court went on to say that

10

>   under §499e(c)(3)-(4) and 7 C.F.R. §46.46(e)-(f), Seald-Sweet was required to disclose the extended payment term on the invoices and accountings related to the fourteen transactions for which Seald-Sweet seeks trust benefits.  Because it failed to do so, the court finds that Seald-Sweet failed to maintain its eligibility for trust benefits and failed to properly preserve its trust benefits on the claimed transactions.  *Id.* at 1268.

Thus, the Court decided that the blanket term "PACA Terms" on an invoice sent from the seller was not specific enough a disclosure to retain PACA trust rights.  As such, that Court would have clearly found G&G's language in the instant case insufficient as well.

In addition, in PACA cases brought before the United States Department of Agriculture, the U.S.D.A. has found that if stock language is used, the language is construed to be insufficient to constitute any special agreement on payment terms, and the statute's default ten (10) day term has been applied.  See Griffin-Holder Co. v. Barbara J. Smith, 49 Agric. Dec. 605 (U.S.D.A. 1990), in which the U.S.D.A. dealt with the language "it is understood unless otherwise stated herein, this sale of produce is made in contemplation of and subject to trade terms and definitions of the PACA," and construed such language to mean the standard ten (10) day payment term under PACA.  *Id* at 609.

The argument that G&G's notice was insufficient is further bolstered by the genuinely accepted meaning of the term "PACA Terms."  Case law has shown that "PACA Terms" is interpreted to mean a ten (10) day term.  See Reaves Brokerage Co, Inc. v. Fidelity Factors, LLC, 2001 WL 34111601, 4 (N.D. Tex. 2001), in which the seller's invoices stated that the terms were "PACA-Terms: Net 10 days."  A case such as the Reaves case also shows that sellers, if using the blanket term "PACA-Terms," should be more specific by inserting language such as "Net 10 days," or "Net 30 days," in order to strictly comply with the statutory requirements.

11

The purpose of the requirement under 7 U.S.C. §499e(c)(3) was clearly to recognize that in instances where the buyer and seller agree upon payment terms different from the statute's ten (10) day term, that different term needs to be *specifically* disclosed on "invoices, accountings, and other documents relating to the transaction."  The statute makes clear that stock language, such as the language contained in 7 U.S.C. §499e(c)(4), should not be used when the parties agree to payment terms beyond ten (10) days.  G&G cannot throw a blanket statement onto its invoices and then argue that it has complied with the strict PACA notice requirements.  To allow G&G to do this would mean that G&G could use the same language on its invoices for shipments that contain payment terms anywhere between ten (10) and thirty (30) days

As the case law and U.S.D.A. decisions demonstrate, and as a practical matter relating to both the purpose of PACA and fairness to buyers and sellers, G&G's use of the term "PACA 'terms'" was clearly insufficient notice as required under 7 U.S.C. §499e(c)(3), and G&G should have included a more clear statement that the terms were "net thirty (30) days," as the parties had in the Purchase Orders.  G&G lost its PACA trust benefit rights by failing to include the requisite notice on its invoices.

**B. G&G also failed to preserve its PACA trust rights by not including the new payment terms on its Bills of Lading**

The language of 7 U.S.C. §499e(c)(3) states that if the parties expressly agree to a payment time period different from that established by the Secretary, "the terms of payment shall be disclosed on invoices, accountings, and *other documents relating to the transaction*." (Emphasis added)  The Bills of Lading are clearly related to the transactions since they were sent with the peppers from G&G to Ebro for signature.  A clear reading of the statute suggests that because the Bills of Lading are related to the transactions, they should have contained the payment term that the parties expressly agreed upon, namely, net thirty (30) days.

12

The Supreme Court has noted that, when interpreting statutes, the starting point is typically "the language of the statute itself." Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc., 447 U.S. 102, 108 (1980). Furthermore, case law suggests that the Bills of Lading are included in "other documents" for purposes of 7 U.S.C. §499e(c)(3)-(4). In Atlantic Coast Produce v. McDonalds Farms, Inc., the seller argued that it fulfilled the statutory language notice requirements of 7 U.S.C. §499e(c)(4), on bills of lading, rather than invoices. Atlantic Coast, 2005 WL 1785137 (W.D. Va. 2005). The Court cited to 7 U.S.C. §499e(c)(4) stating that "in addition to the method of preserving the benefits of the trust specified in paragraph (3), a licensee may use ordinary and usual billing or invoice statements to provide notice of the licensee's intent to preserve the trust. *The bill or invoice statement must include the information required by the last sentence of paragraph (3).*" The court noted that the procedure between seller and buyer in that case was that the buyer would order produce, the shipper would then generate a bill of lading which it transmitted to the shipper, the shipper would then physically transport the bill of lading to the buyer along with the produce, the buyer would then sign the bill of lading as proof that it had received the produce, and the seller would then generate an invoice based on that bill of lading. As a result, the Court found that the bill of lading constituted a "communication … used… for billing or invoice purposes," and thus constituted a document for purposes of the last sentence of 7 U.S.C. §499e(c)(3)-(4). *Id.* at 1. The procedure in the transaction between the buyer and seller in the Atlantic Coast Produce case is virtually identical to the procedure in the case at hand. G&G presented a bill of lading to the truck driver, who would then have the receiving agent at Ebro sign the bill of lading upon receipt of the peppers. The delivery driver would then take the original form and leave a copy of the bill of lading with Ebro. The delivery driver would then show the signed bill of lading to G&G in order to prove

13

that the peppers were received. Clearly, the bills of lading in the transactions at hand constitute communications used for billing or invoice purposes. In addition, the Court in the <u>Nature Quality Vine Ripe Tomatoes</u> case, in denying a shipper's PACA trust claim based on its failure to include the extended payment terms on documents relating to the transaction, stated that the shipper produced "accountings, order forms, shipping point inspections, and *bills of lading* that did not contain the extended payment terms." <u>Nature Quality Vine Ripe Tomatoes v. Rawls Brokerage, Inc.</u>, 536 F.Supp.2d 1259, 1268 (N.D. Ala. 2005) (Emphasis added.) The text of the Court's opinion suggests that a seller has an obligation to disclose expressly agreed upon payment terms, which differ from the ten (10) day statute term, on bills of lading.

The Bills of Lading at issue in the case at hand, attached to this Brief as **Exhibits D-F**, do not state any payment terms, let alone any specific payment term referencing the thirty (30) day payment term agreed upon by Ebro and G&G. This failure provides another reason for this Court to find that G&G failed to preserve its PACA trust rights.

In addition, if the Court decides that G&G has in fact failed to retain its PACA trust rights, Ebro should be granted an award of attorney's fees and costs resulting from having to defend itself in the present adversary proceeding. The Seventh Circuit has made clear that the award of attorney's fees to a prevailing party under PACA is automatic. See <u>Robinson Farms Co. v. D'Acquisto</u>, 962 F.2d 680, 685 (7th Cir. 1992).

**3. BECAUSE G&G FAILED TO PRESERVE ITS PACA TRUST RIGHTS, ITS THIRD COUNT FOR IMMEDIATE TURNOVER SHOULD BE DENIED, AND G&G SHOULD BE TREATED AS AN UNSECURED CREDITOR IN EBRO'S BANKRUPTCY.**

As has been shown, G&G failed to preserve its PACA trust rights against Ebro by failing to comply with the requirements of the PACA statute at 7 U.S.C. §499e(c)(3)-(4). Thus, G&G should be treated as an unsecured creditor for their claim in Ebro's bankruptcy.

14

If, however, G&G is found to have preserved its PACA trust rights, it has still not referenced any law to support its claim that the alleged PACA trust funds should be immediately turned over, rather than administered through the chapter 11 plan. As the party with the burden of proving its case, G&G has failed to show why any alleged PACA trust rights lead to an immediate turnover of such funds without administration through the bankruptcy case.

### V.  CONCLUSION

With respect to Count I of G&G's adversary complaint, although Ebro acknowledges that it breached a contract with G&G for the purchase of jalapeno peppers, it disputes that G&G is owed any attorney's fees based on that breach of contract. With respect to Count II, Ebro contends that G&G did not properly preserve its trust benefits under PACA because it failed to conform to the strict notice requirements of the Act. With respect to Count III, Ebro contends that because G&G failed to preserve its PACA trust benefits, G&G should be treated as merely an unsecured creditor, and Ebro should not be compelled to turn over funds in the amount of $42,920.00, or in any other amount, to G&G ahead of any other unsecured creditor.

        Respectfully submitted,

        EBRO FOODS, INC.

        /s/ Forrest L. Ingram
        One of Debtor's Attorneys

Forrest L. Ingram, #3129032
FORREST L. INGRAM, P.C.
79 W. Monroe, Suite 900
Chicago, IL 60603
(312) 759-2838