IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| EBRO FOODS, INC. | Judge Eugene Wedoff |
| Debtor and Debtor in Possession. | Case No. 09-10101 |
| G AND G PEPPERS, LLC | |
| Plaintiff, | |
| vs. | Adversary No. 09 A 500 |
| EBRO FOODS, INC. | |
| Defendant. | Hearing: 11/10/2009 at 10:00 a.m. |

## DEBTOR EBRO'S RESPONSE BRIEF

Debtor-Defendant EBRO FOODS, INC. ("Ebro" or "Debtor"), through its attorneys, for its response to Plaintiff G AND G PEPPERS, LLC's Post Trial Brief, in the above-captioned adversary brought against Debtor by G and G Peppers, LLC ("G&G"), states as follows:

### I. Summary

Although Debtor Ebro acknowledges that it breached a contract for the purchases of peppers by failing to pay G&G the amounts owed under those purchases, it asserts that G&G has failed to adhere to the strict notice requirements of the Perishable Agricultural Commodities Act ("PACA") statute, as outlined in the Act itself and in subsequent court interpretations. G&G failed to even address Count I of its adversary complaint in its Trial Brief, and so Ebro maintains its position that G&G is not owed any attorney's fees based on its breach of contract. In addition, G&G failed to even address Count III of its adversary complaint and has failed to address *why* it should be granted an immediate turnover of any of Ebro's assets. As such, Ebro

1

maintains its position that G&G should not be granted any immediate turnover, and G&G should be treated as an unsecured creditor for the amounts owed for its breach.

## II. Statement of Facts

While Ebro's Trial Brief contained an outline of the relevant facts, a reiteration of the relevant facts is helpful to understand the current issues.

In September and October of 2007, Ebro sent Purchase Orders to G&G for the purchase of three (3) shipments of jalapeno peppers. The Purchase Orders stated that payment terms were to be "NET 30 DAYS." Upon receipt of these Purchase Orders, G&G signed the Purchase Orders, and returned them to Ebro. See Ex. 1, 3, and 4 of Ebro's Trial Ex. List, and Exhibits A-C of Ebro's Trial Brief.

Some time later in October 2007, G&G made three (3) shipments of jalapeno peppers to Ebro pursuant to the Purchase orders. Upon receipt of the shipments, Ebro signed three (3) Bills of Lading corresponding to the shipments. These Bills of Lading did not contain any payment terms on the purchase. See G&G's Exhibit List at trial, and Exhibits D-F of Ebro's Trial Brief.

Some time after Ebro received and accepted the three (3) shipments of jalapeno peppers, G&G sent invoices for the unpaid shipments. These invoices stated that the payment terms were "PACA 'terms.'" See Ex. 8, 9, and 10 of Ebro's Trial Ex. List, and Exhibits G-I of Ebro's Trial Brief.

Ebro acknowledges that it never paid for the three (3) shipments of jalapeno peppers referenced above.

On March 24, 2009, Ebro filed its Chapter 11 Bankruptcy case. On June 19, 2009, G&G filed the present Adversary alleging Breach of Contract (Count I), Enforcement of PACA Trust (Count II), and Turnover of PACA Trust Assets (Count III).

2

**III. G&G has failed to establish that it has properly preserved its PACA trust rights under 7 U.S.C. §499e(c)(3)**

<u>The last sentence of 7 U.S.C. §499e(c)(3) is the RULE, and not the exception</u>

The Perishable Agricultural Commodities Act ("PACA") statute is clear on its face as to what a seller must do in order to retain its PACA trust rights. The PACA statute states the following:

> (3) The unpaid supplier, seller, or agent shall lose the benefits of such trust unless such person has given written notice of intent to preserve the benefits of the trust to the commission merchant, dealer, or broker within thirty calendar days (i) after expiration of the time prescribed by which payment must be made, as set forth in regulations issued by the Secretary, (ii) after expiration of such other time by which payment must be made, as the parties have expressly agreed to in writing before entering into the transaction, or (iii) after the time the supplier, seller, or agent has received notice that the payment instrument promptly presented for payment has been dishonored. The written notice to the commission merchant, dealer, or broker shall set forth information in sufficient detail to identify the transaction subject to the trust. *When the parties expressly agree to a payment time period different from that established by the Secretary, a copy of any such agreement shall be filed in the records of each party to the transaction and the terms of payment shall be disclosed on invoices, accounts, and other documents relating to the transaction.* 7 U.S.C. §499e(c)(3)(2009) (Emphasis Added).

Thus, if the buyer and seller enter into a transaction for which payment terms are *different* from the ten (10) day period prescribed by the Secretary, the seller must disclose those different payment terms on all "invoices, accountings, and other documents relating to the transaction." 7 U.S.C. §499e(c)(3).

In its Post-Trial Brief, G&G concedes that this was the holding of the Ninth Circuit in <u>Bowlin & Son, Inc. v. San Joaquin Food Service, Inc.</u>, 958 F.2d 938 (9th Cir. 1992). However, G&G seems to argue that this is not the traditional rule under the PACA statute and makes it seem as if this rule is some sort of deviation from any other generally accepted interpretation of PACA.

3

G&G's interpretation is without basis in law. The rule stated in the Bowlin case reflects holdings from courts across the country, and reflects the plain language of the statute itself. Ebro's Trial Brief cited cases from Bankruptcy courts in the District of Massachusetts and Western District of New York, the Northern District of Alabama, as well as the Sixth Circuit, all upholding the strict requirement that when a buyer and seller expressly agree to a payment period different from the ten (10) day period provided for in the PACA regulations, the seller *must* also include those terms of payment its invoices. See AJ Rinella & Co. v. Bartlett, 367 B.R. 21, 30 (Bankr. D. Mass. 2007); Maine Farmers Exchange v. Delyser, 295 B.R. 430, 435 (Bankr. W.D.N.Y. 2003); Natural Quality Vine Ripe Tomatoes v. Rawls Brokerage, Inc., 536 F.Supp.2d 1259, 1268 (N.D. Ala. 2005); and Overton Distributors, Inc. v. Heritage Bank, 340 F.3d 361, 365 (6th Cir. 2003). Moreover, the *exact language* of the last sentence of 7 U.S.C. §499e(c)(3) leaves no doubt that when the parties "expressly agree to a payment time period different from that established by the Secretary...the terms of payment shall be disclosed on invoices, accounts, and other documents relating to the transaction." As the Bowlin Court stated:

> "the language of the statute is unambiguous. Subsection 499e(c)(3) specifically prescribes the means of preserving PACA trust benefits. Unless the terms of the statute are met, it specifies that the benefits of the trust are lost. Where 'the parties expressly agree to a payment time period different from that established by the Secretary,' the statute mandates that 'the terms of payment *shall* be disclosed on invoices, accountings, and other documents relating to the transaction.' 7 U.S.C. §499e(c)(3) (emphasis added). The clear command of this language is that a failure to include payment terms in invoices divests the seller of trust benefits." Bowlin at 940.

Thus, there is no plausible reason for this Court not to follow the rule above. Equally telling is that G&G's Post-Trial Brief filed to cite any cases rejecting this rule. Thus, the Court should disregard G&G's assertion in its Post-Trial Brief that the rule stated by the Ninth Circuit in Bowlin has not been adopted elsewhere across the country.

4

### There was a pre-transaction written agreement here

G&G's Post-Trial Brief alleges that even if the rule taken from the last sentence of 7 U.S.C. §499e(c)(3) is applied, it would not be applicable to this case, because there was no alleged written agreement entered into prior to the transaction. G&G's Post-Trial Brief asserts that the Purchase Orders were entered into contemporaneously with the transaction and are "transaction documents" rather than "agreements." However, G&G fails to cite any authority to back up its argument that Purchase Orders constitute transaction documents and thus cannot be considered written agreements entered into prior to the transaction. G&G fails to cite even one case applying this line of thinking to Purchase Orders. G&G cannot blindly assert this theory without any authority to support it.

To bolster its argument that the Purchase Orders were not "written agreements" entered into prior to the transaction, G&G's Post-Trial Brief distinguishes the Uniform Commercial Code ("UCC") definitions of "agreement" and "contract" under UCC §1-201(3) and §1-201(11), respectively. This only weakens G&G's argument, however. The Seventh Circuit has held that signed acknowledgments of purchase orders sent from a buyer to a seller constituted "agreements" under UCC §1-201(3). See Wisconsin Knife Works v. National Metal Crafters, 781 F.2d 1280, 1284 (7th Cir. 1986). The Eighth Circuit has similarly found that a "sequence of negotiation and the exchange of purchase order and acknowledgment forms clearly show 'agreement,'" when interpreting that term in the context of UCC §1-201(3). See U.S. Industries, Inc. v. Semco Manufacturing, Inc., 562 F.2d 1061, 1067 n.8 (8th Cir. 1977).

Moreover, the UCC makes clear that courts should interpret parties' agreements by looking at the parties' *course of dealing*. See UCC §2-208(2) which states that the "express terms of the agreement and any such course of performance, as well as any *course of dealing* and

5

usage of trade, shall be construed whenever reasonable as consistent with each other..."
(emphasis added). In sales of jalapeno peppers from G&G to Ebro in the past, Ebro had always used the term "NET 30 DAYS" on its purchase orders, which were always sent to and signed by G&G, and then later returned to Ebro. Ebro did this on at least three occasions from September 15, 2006 through September 28, 2006, over a year prior to the transactions at issue in this case. See Ex. 5, 6, and 7 of Ebro's Trail Ex. List, and also those documents attached to this Response Brief as **Exhibits A-C**. Thus, G&G was always aware, via the parties' course of dealing, that payment terms on the shipments of jalapeno peppers were thirty (30) days. This supports the fact that the parties had a valid "written agreement" calling for payment terms of thirty (30) days.

In addition, the "transactions" did not occur when the parties signed and exchanged the Purchase Orders. The "transactions" occurred when G&G shipped the jalapeno peppers. One need only look to the generally accepted meaning as well as the Merriam-Webster dictionary meaning of the word "transaction" to find that it is "an exchange or transfer of goods, services, or funds." *Merriam-Webster Online*, http://www.merriam-webster.com/dictionary/transaction. The Purchase Orders were exchanged and signed *before* the transaction, and if they were never exchanged and signed by the parties, the transaction of sending the jalapeno peppers would never have occurred.

Also insightful to the issue is that the Northern District of Illinois, in cases interpreting PACA, has held that a valid PACA trust "arises when a commission merchant, dealer, or broker *receives and accepts* perishable agricultural commodities" Anthony Marano Co. v. Glass, 2007 WL 257630, 2 (N.D. Ill. 2007) (emphasis added). Thus, the trust was created when Ebro received and accepted the jalapeno peppers, and was later lost when G&G failed to adhere to the strict notice requirements of 7 U.S.C. §499e(c)(3). As a practical matter, it would seem that the

6

statutory trust is created at the time the *transaction* takes place. The transaction occurs upon delivery of the produce, the same time that the trust is created, though the trust is subject to be lost at a later time if the seller does not strictly comply with the statutory notice requirements of PACA, as was the case here between Ebro and G&G. G&G's Post-Trial Brief confuses the issue when it states that the Purchase Orders were entered into "contemporaneously" with the transaction and fails to cite any authority to support its argument.

Furthermore, courts have traditionally interpreted the "transaction" in a PACA claim to be a fixed date. This also refutes G&G's argument that a "transaction" can occur over a time period of multiple days, as it has alleged here, because the Purchase Orders were signed and exchanged prior to the jalapeno peppers being shipped. See Debruyn Produce Company v. Richmond Produce Co., Inc., 112 B.R. 364, 370, stating that the "USDA's regulations, 7 CFR 46.46(g)(3), provide that the notice must not only state that it is a notice of the claimant's intent to preserve trust benefits but that it also: '...include information which establishes for each shipment:...(ii) *The date of the transaction*, commodity, contract terms, invoice, price, and the date payment was due.'"

G&G's reliance on the case law cited in its Post-Trial Brief is also misleading. In In re Ande Foods, Inc., 110 B.R. 346 (Bankr. N.D. Ill. 1989), the case dealt with the issue of when the seller was required to give written notice of its intent to preserve its PACA trust rights; the case did not deal with the issue of whether the seller was required to disclose new payment terms on its invoices pursuant to a written agreement executed between the parties. G&G's reliance on In re Lombardo Fruit and Produce Co., 12 F.3d 110 (8th Cir. 1993) is also misleading, since that case did not deal with documents that were signed by both parties, but rather with the issue of whether vague testimony stating that offers for purchase were sent to the seller can constitute

"written agreements" under PACA, without further proof that the offers were actually signed and accepted. The court stated that the "testimony cannot substitute for the writing requirement required by PACA." *Id* at 113. If the Court chooses to rely on any of G&G's cited case law, it should rely only on those cases similar to the one at hand, specifically where the parties both signed and accepted the alleged agreement. The lack of authorities cited by G&G provide further grounds for the Court to find that the Purchase Orders constituted a valid written agreement extending payment terms to thirty (30) days, and that the Purchase Orders were clearly "written agreements" entered into prior to the transaction.

In fact, Ebro's Brief established, via case law, including case law before the Seventh Circuit, that a document constitutes a "written agreement" under PACA extending payment terms beyond the ten (10) day payment term, and thus requiring more strict notice on invoices and other documents, when the agreement satisfies the Statute of Frauds. See Patterson Frozen Foods, Inc. v. Crown Foods International, Inc., 307 F.3d 666, 671 (7th Cir. 2002); AJ Rinella & Co. v. Timothy Bartlett, 367 B.R. 21, 31 (Bankr. D. Mass. 2007); and In re Cafeteria Operators, LP, 299 B.R. 411, 415 (Bankr. N.D. Tex. 2003). In addition, Ebro's Trial Brief established how the Purchase Orders at issue satisfy the Statute of Frauds and are thus valid "written agreements" as contemplated by 7 U.S.C. §499e(c)(3).

In addition, instances similar to those at hand have established that the exchange of the Purchase Orders clearly operated as a "written agreement" extending the payment terms for purposes of 7 U.S.C. §499e(c)(3). In Overton Distributors Inc. v. Heritage Bank, 340 F.3d 361, the Sixth Circuit dealt with a case in which the seller of produce sent a letter to the buyer with payment terms different from the standard ten (10) day term contemplated by PACA. The buyer then countersigned the letter and sent it back to the seller. The Sixth Circuit held that the

8

"parties clearly agreed…to terms different from the standard 10-day payment provision contained in the PACA regulations. Consequently, PACA and the regulations mandate that those terms be disclosed on the invoices." *Id* at 366.

The letter signed and exchanged by the parties in the <u>Overton</u> case is almost identical to the situation at hand. The Purchase Orders here contained the essential terms of the forthcoming transaction, including terms on payment, shipping, quantity, and price. Like the letter in the <u>Overton</u> case, the Purchase Orders were also *signed and assented to by both parties.*

The Purchase Orders were exchanged and signed by both parties, and had the essential terms of the agreements for the shipments of jalapeno peppers. In addition, this was all completed *prior to* the actual shipments of the jalapeno peppers. It is unthinkable that the agreements signed by both parties *before* the actual shipments, and detailing the essential terms of the contracts, could be considered contemporaneous to the transaction at hand. Had the Purchase Orders never been exchanged, there would never have even been shipments of the jalapeno peppers. The Purchase Orders clearly constitute "written transactions" prior to the transaction.

### G&G failed to comply with the mandates of the PACA statute and thus lost its trust rights

Because the Purchase Orders signed by both parties constitute "written transactions" for purposes of 7 U.S.C. §499e(c)(3), G&G was required to disclose the new payment terms on all "invoices, accountings, and other documents related to the transaction." G&G failed to do this but simply wrote "PACA 'terms'" on its invoices. As outlined in Ebro's Trial Brief, this blanket term is not sufficient. Case law has made clear that the notice requirement of the PACA statute must be strictly complied with in order for a seller to preserve its PACA trust benefits. See <u>Maine Farmers Exchange v. Delyser</u>, 295 B.R. 430 (Bankr. W.D.N.Y. 2003). The Northern

9

District of Alabama even dealt with the situation of a seller using the term "PACA Terms" on its invoices and stated that such notice was *insufficient* for purposes of the last sentence of 7 U.S.C. §499e(c)(3) when the parties agreed to a payment term different than the statutorily contemplated ten (10) day term.

In addition, bankruptcy courts have frequently emphasized the importance of strict compliance with the requirements of the PACA statute in bankruptcy cases. See Anic, Inc. v. Chipwich, Inc., 165 B.R. 135, 138 (Bankr. S.D.N.Y. 1994), stating that given "PACA's adverse impact on the estate and its incompatibility with the fundamental bankruptcy principle of equality of treatment for similarly situated creditors, we hold that a PACA claimant cannot benefit from PACA, at the expense of other creditors, without having *strictly* complied with the statute and applicable regulations (emphasis added); and also Blair Merriam Fresh Fruit & Produce Co. Inc. v. Clark, 95 B.R. 774, 779 (Bankr. D. Colo. 1989), stating that the "substantial impact of the application of the 1984 PACA amendments upon other creditors of a debtor convinces this court that strict compliance with the notice provisions of the regulations recited above should be required."

G&G's emphasis on the fact that the transactions occurred two (2) years ago is insignificant. G&G obtained a default judgment against Ebro in the suit brought before the USDA. Thus, Ebro never even asserted any defense. In addition, Ebro never appeared in the suit initiated in the Northern District, because that suit was stayed because of the present bankruptcy. The Northern District of Illinois has made clear that, when handling PACA claims brought before it, which were previously heard before the USDA, the scheme of Congress provided when it passed PACA allows the seller to offer new defenses in the present suit. See United Potato Co. Inc. v. Burghard & Sons, Inc., 18 F.Supp.2d 894, 896 (N.D. Ill. 1998).

10

### G&G has even failed properly to plead a PACA trust claim

It is well established that in order to "recover the proceeds from a PACA created trust, a plaintiff must demonstrate: (1) the commodities sold were perishable agricultural commodities; (2) the purchaser of the perishable agricultural commodities was a commission merchant, dealer, or broker; (3) the transaction occurred in interstate or foreign commerce; (4) the seller has not received full payment on the transaction; and (5) the seller preserved its trust rights by giving written notice to the purchaser within the time provided by the law. A&J Produce Corp. v. Chang, 385 F.Supp.2d 354, 358 (S.D.N.Y. 2005); see also Reaves Brokerage Co. Inc. v. Fidelity Factors, LLC, 2001 WL 34111601, 3 (N.D. Tex. 2001).

G&G has not alleged in its complaint the above elements. Thus, G&G has failed properly to plead that it has a basis to recover proceeds from any alleged PACA created trust.

### Ebro is entitled to attorney's fees for defending the PACA trust claim

Because G&G has failed to preserve its PACA trust rights, Ebro asserts that as a prevailing party, it should be entitled to its own attorneys fees incurred in connection with defending the present adversary claim.

### IV. G&G's Post-Trial Brief failed to address Count I of the Adversary Complaint

While G&G's Post-Trial Brief cites case law stating that it is entitled to reasonable attorney's fees in connection with its PACA claim, it doesn't cite any authority, or even address why it should be entitled attorney's fees in connection with its breach of contract claim contained in Count I of its adversary complaint. As such, Ebro reiterates the argument contained in its Trial Brief that G&G has no basis to demand attorney's fees for Ebro's breach of the contract between the parties. In addition, Ebro has not been given a chance to respond to any argument

11

from G&G that it should be entitled attorney's fees for that breach, because G&G failed to address the issue in its Post-Trial Brief. Ebro has never conceded this issue.

### V. G&G's Post-Trial Brief failed to address Count III of its Adversary Complaint

In addition, G&G's Post-Trial Brief also fails to address Count III of its adversary complaint, that it is entitled a turnover of trust assets. G&G does not cite any law to support why it should be granted a turnover, no matter what the decision of the Court in regards to its PACA trust claim. As such, Ebro reiterates the argument contained in its Trial Brief that G&G's third Count for turnover be denied. In addition, Ebro asks that the Court note that G&G has cited no authority upon which to base an turnover order. Ebro also asks that the Court take notice that Ebro has not been given a chance to respond to any argument from G&G that it should be entitled turnover, because G&G failed to address the issue in its Post Trial Brief. Ebro has never conceded this issue.

### VI. Conclusion

With respect to Count I of G&G's adversary complaint, although Ebro acknowledges that it breached a contract with G&G for the purchase of jalapeno peppers, it disputes that G&G is owed any attorney's fees based on that breach of contract. Ebro addressed this issue in its Trial Brief, but G&G failed to do so. Thus, Ebro has no argument from G&G relating to Count I to respond to in this Brief. With respect to Count II, G&G did not properly preserve its trust benefits under PACA because it failed to conform to the strict notice requirements of the Act. Ebro stresses that the last sentence of 7 U.S.C. §499e(c)(3) is the governing rule, and not the exception. Ebro had valid written agreements with G&G, as contemplated by that section of the statute, requiring G&G to adhere to the strict notice requirements of PACA and mandating that G&G disclose the extended thirty (30) day payment terms on its invoices. G&G failed to do so,

12

and so lost any rights it had under the PACA trust. With respect to Count III, Ebro disputes that there is any basis for the Court to order turnover of any of Ebro's assets pursuant to any alleged PACA trust. Ebro addressed this Count in its Trial Brief, but G&G failed to do so. As such, Ebro has not been given any argument to respond to concerning Count III.

Respectfully submitted,

EBRO FOODS, INC.

/s/ Forrest L. Ingram
One of Debtor's Attorneys

Forrest L. Ingram, #3129032
FORREST L. INGRAM, P.C.
79 W. Monroe, Suite 900
Chicago, IL 60603
(312) 759-2838